UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

Civil Division

|  |  |  |
|---|---|---|
| JOHN DOE,<br><br>And<br><br>JANE DOE 1,<br><br>And<br><br>JANE DOE 2,<br><br>　　　　　*Plaintiffs*,<br><br>　　v.<br><br>BROOKE ROLLINS, SECRETARY,<br>UNITED STATES DEPARTMENT<br>OF AGRICULTURE,<br>1400 Independence Ave., S.W.<br>Washington, DC 20250<br><br>　　　　　*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Jury Trial Demand |

## COMPLAINT

Plaintiffs John Doe, and Jane Doe 1-2, by and through their undersigned counsel, hereby file this Complaint against Defendant Brooke Rollins, Secretary, United States Department of Agriculture (hereinafter "Defendant Rollins," "USDA" or "Defendant"). Plaintiffs seek relief pursuant to the Administrative Procedure Act, and the First and Fifth Amendments to the U.S. Constitution, including but not limited to injunctive and declaratory relief and other equitable relief, compensatory damages, litigation expenses, and reasonable

1

attorneys' fees, based on Defendant's discriminatory, retaliatory, and otherwise unlawful actions against Plaintiffs.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of Columbia, and Defendant's headquarters is within this jurisdiction.

## PARTIES

3. The Plaintiffs are nonpartisan career civil servants employed in the USDA Foreign Agricultural Service (FAS), and USDA Forest Service Work Environment and Performance Office (WEPO).

4. Defendant Brooke Rollins is the Secretary of the United States Department of Agriculture, is an agency of the federal government headquartered in Washington, D.C. Defendant Rollins is being sued in her official capacity.

## FACTS

5. The Plaintiffs are nonpartisan career civil servants selected for positions within the United States Department of Agriculture ("USDA" or "Agency") to serve the American people. The Plaintiffs are not advocates for any person or policy other than all Americans.

6. The Plaintiffs collectively represent over 30 years of federal service, with documented histories of exceptional performance, innovative problem-solving, and unwavering commitment to the mission of their respective agencies in service of the American public. Each

Plaintiff has consistently received positive performance evaluations, demonstrating their value as skilled professionals whose contributions extend far beyond any specific office or initiative.

7. On January 20, 2025, Donald Trump was inaugurated as the forty-seventh President of the United States and on the evening of January 20, 2025, he signed Executive Order ("EO") 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing. The EO described DEI and DEIA programs as "illegal and immoral."

8. On January 21, 2025, Charles Ezell, the Acting Director, U.S. Office of Personnel Management (OPM), issued a Memorandum to the Heads and Acting Heads of U.S. Government Departments and Agencies, directing federal agencies to take prompt actions regarding the offices and agency sub-units focusing exclusively on DEIA initiatives and programs, including sending notifications to all employees of DEIA offices that they are being placed on paid administrative leave immediately.

**Plaintiff John Doe**

9. Plaintiff John Doe began employment in Federal Service with the Defense Department in 2019 where he remained until transferring to the USDA Food and Nutrition Service in January 2024. In March 2024, Doe was promoted to the USDA Office of the Chief Diversity and Inclusion Officer (OCDIO) as a Public Affairs Specialist, where he supported internal communication and correspondence activities and did not engage in any policy development, hiring, or personnel decisions.

10. On December 29, 2024, the USDA Office of the Chief Diversity and Inclusion Officer (OCDIO) was closed in advance of the new Administration's arrival. On the same day, as

part of a management-directed reassignment, Plaintiff John Doe was transferred to a Compliance Program Manager role within the Foreign Agricultural Service (FAS).

11. On January 22, 2025, Plaintiff John Doe was placed on administrative leave via email notification from Chief Human Capital Officer Anita R. Adkins, citing "*all employees within DEIA programs will be placed on administrative leave with full pay and benefits*". This action was taken despite the fact that he had been reassigned to the Foreign Agricultural Service and remained in his compliance program manager position for nearly a month.

12. Plaintiff John Doe pursued multiple legal challenges, including filing an Equal Employment Opportunity (EEO) complaint and a complaint with the Office of Special Counsel (OSC), which was closed after issuing an Individual Right of Action (IRA) letter, allowing him to proceed with a Merit Systems Protection Board (MSPB) appeal. Both his EEO complaint and MSPB appeal remain ongoing while he continues to be on administrative leave without system access.

**Plaintiff Jane Doe 1**

13. Plaintiff Jane Doe 1 began her federal career in 2016 at the National Capital Planning Commission and was hired at the USDA Forest Service as the National Development Recreation Program Manager in 2020. She was promoted in 2023 to the position of Director of the National Equity and Engagement Team at the USDA Forest Service.

14. On January 6, 2025, Plaintiff Jane Doe 1 transitioned into a new leadership role as Director of the Analysis, Consultation, and Performance Team within the Work Environment and Performance Office (WEPO). This role did not involve DEIA-related functions, and her reassignment was announced via an agencywide Forest Service newsletter.

4

15. On January 21, 2025, USDA Deputy Chief Katie O'Connor informed Plaintiff Jane Doe 1 that an email would soon be sent stating that all employees in DEIA programs would be placed on administrative leave.

16. On January 22, 2025, Plaintiff Jane Doe 1 was placed on administrative leave via email notification from Chief Human Capital Officer Anita R. Adkins, citing "*all employees within DEIA programs will be placed on administrative leave with full pay and benefits*." This action was taken despite the fact that she had already transitioned into a new non-DEIA leadership role within WEPO.

17. On January 31, 2025, Plaintiff Jane Doe 1 filed an informal administrative grievance requesting reinstatement and arguing that her placement on leave was unlawful and should not have been included since her former directorate had already finalized and closed all prior work related to the Equity Action Plan before November 5, 2024.

**Plaintiff Jane Doe 2**

18. Plaintiff Jane Doe 2 began employment with the USDA Forest Service in 2009 as an Environmental Coordinator. In 2012 she accepted a position in Washington, D.C. as a National Policy Act Program Planning Specialist and in 2018 she relocated to California and began working as a Regional Community Engagement Planner. Beginning in 2021, she worked for WEPO as a Senior Equity Program Manager.

19. On September 7, 2024, Plaintiff Jane Doe 2 suffered a severe traumatic brain injury after being struck by a truck while crossing the street with her son, leading to a two-week coma and months of medical treatment and rehabilitation. She remained on medical leave continuously since that date.

5

20. On January 22, 2025, while Plaintiff Jane Doe 2 was on medical leave, she was placed on administrative leave via email notification from Chief Human Capital Officer Anita R. Adkins, citing "*all employees within DEIA programs will be placed on administrative leave with full pay and benefits*." This action was taken despite the fact that she had been on medical leave since September 2024 and had not engaged in DEIA-related work for months.

**Administrative Actions Against All Plaintiffs**

21. Upon being placed on administrative leave on January 22nd, all Plaintiffs were abruptly stripped of access to critical network systems, including e-mail access, Linc Pass certificates, and personnel information essential to their roles. As a result, they were unable to obtain critical records to support their complaints, grievances, and other claims, and were effectively cut off from all official agency communication channels.

22. On January 24, 2025, Charles Ezell, Acting Director, U.S. Office of Personnel Management issued a Memorandum to the Heads and Acting Heads of Departments and Agencies titled "Guidance Regarding RIFs of DEIA Offices" (Exhibit 1).

23. The January 24, 2025 OPM Memorandum explicitly reveals that the administrative leave imposed on all Plaintiffs was designed from the outset as a pretext for their predetermined termination through an illegal Reduction in Force (RIF). The memorandum states: "*OPM's initial guidance required agencies to submit written plans no later than January 31, 2025, for executing a reduction-in-force (RIF) action regarding the employees who work in a DEIA office. However, agencies can and should begin issuing RIF notices to employees of DEIA offices now.*" Most critically, the memorandum directed agencies to "*define the competitive area solely in terms of the DEIA office where the employees worked,*" effectively

6

creating a Catch-22 situation for all Plaintiffs. This artificially restricted competitive area means Plaintiffs could only compete for reassignment positions within offices that had already been closed, deliberately eliminating any meaningful opportunity for continued federal employment regardless of their qualifications. This directive directly contradicts standard federal RIF regulations as defined by 5 CFR §351.402 that describe competitive areas geographically and organizationally to provide affected employees with a reasonable opportunity for reassignment.

24. This predetermined outcome demonstrates the arbitrary and capricious nature of the Agency's actions against all Plaintiffs.

25. As of the date of this filing, Plaintiffs have been on administrative leave for over 70 days. This extended duration is disparate and atypical from any prior use of administrative leave the Department has instituted for non-disciplinary purposes, as explicitly confirmed in the notice delivered by Ms. Adkins to each Plaintiff on January 22, 2025. The extraordinary length further demonstrates the punitive nature of the Agency's actions despite its characterization as "non-disciplinary."

26. While on administrative leave, Plaintiffs have been denied the opportunity to be considered for reinstatement or reassignment into open positions within the USDA and Forest Service for which they are qualified based solely on their erroneous designation as "DEIA employees," despite having been reassigned to non-DEIA roles or being on medical leave prior to the Executive Order.

27. All Plaintiffs possess extensive transferable skills with over decades of federal service in program management, project coordination, communications, data analysis, and administrative functions that are entirely unrelated to DEIA-specific work. Plaintiffs are not

DEIA practitioners or subject matter experts, but rather skilled program managers, analysts, and administrators who happened to serve in offices that, among other responsibilities, supported congressionally-mandated DEIA initiatives as part of broader organizational missions.

28. It is critical to note that all Plaintiffs were reassigned to non-DEIA positions in December 2024 and early January 2025, prior to or coinciding with the inauguration of the new administration on January 20, 2025. Despite these facts, they were all erroneously designated as "DEIA employees" on January 22, 2025.

## Count I
### Violation of the Administrative Procedure Act 5 U.S.C. § 706

Plaintiffs incorporate the allegations in paragraphs 1 through 28 as if fully set forth here.

29. The Administrative Procedure Act ("APA"), 5 U.S.C. § 706, provides that a district court may hold unlawful agency action found to be arbitrary, capricious, an abuse of discretion, and in violation of the Constitution. The APA permits the Court to review final agency action, as well as action for which there is no other adequate remedy. See 5 U.S.C. § 702, 704. Defendant's decision to designate Plaintiffs as "DEIA" employees and place Plaintiffs on administrative leave and deny them opportunities to accept positions elsewhere within the USDA, without sufficient justification constitutes an arbitrary and capricious agency action, an abuse of discretion, and is otherwise not in accordance with law in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A).

30. Although Plaintiff John Doe has pursued administrative remedies through the Merit Systems Protection Board (MSPB) and Equal Employment Opportunity (EEO) process, these forums cannot provide adequate relief for the constitutional violations and APA claims at

issue. The MSPB's jurisdiction is limited to reviewing the procedural aspects of personnel actions but cannot address the broader pattern of arbitrary decision-making, constitutional violations, and the stigmatizing impact of the DEIA designations. Furthermore, while administrative remedies might address individual employment actions, they cannot provide the declaratory and injunctive relief necessary to prevent continued harm to Plaintiffs' professional reputations and career prospects across the federal government resulting from their false designation as "DEIA employees" despite their prior reassignment to non-DEIA roles.

31.     The guidance issued in the January 24, 2025 OPM Memorandum which outlines placement on administrative leave followed by the RIF, would cause irreparable professional and financial harm to all Plaintiffs that cannot be adequately remedied through the MSPB, which is limited to reviewing technical compliance with RIF procedures rather than addressing the fundamentally improper designation that led to the RIF.

32.     The need for judicial intervention in similar circumstances has been recognized by other federal courts. On March 31, 2025, in *John Doe 1, et al. v. U.S. Office of the Director of National Intelligence, et al. (Civil Action No. 1:25-cv-300), the U.S. District Court for the Eastern District of Virginia* enjoined defendants from terminating intelligence community employees who were similarly placed on DEIA administrative leave following the January 2025 Executive Order. That court explicitly directed the agency to consider requests for reassignment to available positions based on qualifications and skills, without regard to the restrictive definition of 'competitive area' in the January 24, 2025 OPM Memorandum-the same memorandum being used to restrict Plaintiffs' employment opportunities in this case. That court's preliminary injunction represents a significant precedent recognizing that the government's targeted actions against employees based on office assignment rather than actual job duties may constitute unlawful discrimination and warrant judicial intervention.

33. The stigmatizing effect of being designated as "DEIA employees" has created tangible and ongoing harm to Plaintiffs' professional reputations and career prospects. While on administrative leave, Plaintiffs have been excluded from professional development opportunities, team meetings, and agency initiatives that would normally contribute to their career advancement.

34. The actions taken against Plaintiffs are contrary to their constitutional right under the First Amendment to freedom of speech and association and were taken based upon their (assumed) beliefs about a political issue, which is irrelevant while they serve in their assigned positions at the Agency. The actions taken against Plaintiffs are contrary to their rights under the First and Fifth Amendments, including the freedom of association; freedom from infringement of their liberty interest in their names and reputation; and equal protection under the laws of the United States.

35. Defendant failed to provide Plaintiffs with proper notice, reasoning, or due process protection as required under federal law and policies governing civil service employees, thereby violating the APA.

36. There is no other remedy than a judicial remedy for the harm Plaintiffs have suffered and will continue to suffer.

## Count II

### Violation of the U.S. Constitution, Amend. 1

Plaintiffs incorporate the allegations in paragraphs 1 through 36 as if fully set forth herein.

37. The First Amendment provides in pertinent part that Congress shall make no law abridging the freedom of speech, or the right of the people to petition the Government for a redress of grievances. It further prohibits the regulation or censure of speech based on "`the

specific motivating ideology or the opinion or perspective of the speaker.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 168-69 (2015) (citations omitted).  This government action is a "'blatant' and `egregious form of content discrimination'" and is subject to strict scrutiny." *Reed,* 576 U.S. at 168, 171.  Plaintiffs engaged in protected activity by executing their lawful job functions and, in some instances, raising concerns regarding their unlawful treatment.

38. Defendant(s) designated Plaintiffs as DEIA employees that must be terminated from the Agency because of their perceived political beliefs and working in a DEIA office. Defendant unlawfully retaliated against Plaintiffs by placing them on administrative leave in response to their engagement in these protected activities, and denying them opportunities to accept positions elsewhere within the Agency, and thereby violating their First Amendment rights under the U.S. Constitution.

39. The Agency's actions constitute viewpoint discrimination in violation of the First Amendment by designating Plaintiffs as "DEIA employees" based solely on prior office assignments rather than their current duties or any actual expression of views.

40. The arbitrary nature of designating employees as 'DEIA employees' based on prior office assignments rather than their actual duties has been recognized as problematic by other federal courts. In *John Doe 1, et al. v. U.S. Office of the Director of National Intelligence*, the Eastern District of Virginia required individualized assessment of each employee's situation rather than permitting blanket categorization and termination, implicitly recognizing that such categorical treatment based on perceived political beliefs or prior work assignments rather than current duties violates constitutional protections.

41. Defendant's actions were taken under the color of law and lacked a compelling governmental interest, nor were they narrowly tailored to serve any legitimate purpose.

### Count III
### Violation of U.S. Const. Amend. V
### *Unconstitutional Denial of Due Process*

Plaintiffs incorporate the allegations in paragraphs 1 through 41 as if fully set forth herein.

42. The Fifth Amendment provides in pertinent part that "no person shall . . . be deprived of life liberty or property, without due process of law."

43. Defendants designated Plaintiffs as DEIA employees that must be terminated from the Agency because of their perceived political beliefs and working in a DEIA office. The Plaintiffs did not receive notice prior to being subjected to the DEIA designation. Plaintiffs were not aware that working in their positions would subject them to punishment or the severity of the potential punishment. Defendant did not and has not provided Plaintiffs with any opportunity to challenge the DEIA designation prior to the announcement that their office was a DEIA office and they were DEIA staff. After the DEIA designation, Plaintiffs have not been given an opportunity by Defendant to challenge the DEIA designation, and have been denied an opportunity accept positions elsewhere within the Agency. No compelling government interest justifies Defendant's violation of Plaintiffs' due process rights. Defendant violated Plaintiffs' rights under the Fifth Amendment by their erroneous identification as working in a DEI/DEIA position and denial of reassignment offered to other Agency employees and placement on administrative leave to be terminated as DEIA employee. The decision to label Plaintiffs as DEIA staff was based on improper purposes, among them, for retaliatory purposes and to punish people who worked in DEIA offices. The DEIA designation is based on false premises and the sanctions it imposed are disproportionate to any perceived infraction. The Defendant chose to punish Plaintiffs who are all minority individuals, which confirms the retaliatory and disproportionate nature of the DEIA designation. This improper purpose and absence of any legitimate justification demonstrates that the DEIA designation is abusive and irrational. As a result of

Defendant's actions, Plaintiffs' Fifth Amendment right to due process has been violated. Defendant's actions have caused Plaintiffs to suffer ongoing and irreparable harm.

44. Injunctive relief is necessary and appropriate because the administrative remedies available to Plaintiffs cannot address the reputational damage attached to the "DEIA" designation, which has already resulted in loss of job offers and will continue to harm Plaintiffs' professional standing throughout the federal government. The MSPB lacks authority to compel the public recantation needed to remedy the defamatory statements made by Agency officials regarding Plaintiffs' work being "divisive," "wasteful," and engaged in "discrimination;

## Count IV

**Violation of U.S. Const. Amend. V**
*Unconstitutional Denial of Equal Protection*

Plaintiffs incorporate the allegations in paragraphs 1 through 44 as if fully set forth herein.

45. The Equal Protection Clause as incorporated by the Fifth Amendment to the U.S. Constitution prohibits the federal government, its agencies, its officials, and its employees from denying persons the equal protection of the laws. The Equal Protection Clause prohibits the government from favoring similarly situated individuals without a constitutionally legitimate basis. *Vill. Of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000). To justify discriminatory conduct, the government must put forward a "plausible reason" for its differential treatment. *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313-14 (1993). The actions cannot be "so attenuated" from its conduct "as to render [it] arbitrary and irrational." *City of Cleburne v. Cleburne Center, Inc.,* 473 U.S. 432, 446 (1985) (citations omitted). "[A] bare desire to harm a politically unpopular group" is "not [a] legitimate state interest[.]" *City of Cleburne,* 473 U.S. at 447.

46. Defendants designated Plaintiffs as DEIA employees that must be terminated from the Agency because of their perceived political beliefs and working in a DEIA office. The Plaintiffs did not receive notice prior to being subjected to the DEIA designation. Plaintiffs were not aware that working in their positions would subject them to punishment or the severity of the potential punishment. Defendant did not and has not provided Plaintiffs with any opportunity to challenge the DEIA designation. After the DEIA designation, Plaintiffs have not been given an opportunity by Defendant to challenge the DEIA designation. No compelling government interest justifies Defendant's violation of Plaintiffs' due process rights. Defendant violated Plaintiffs' rights under the Fifth Amendment by their erroneous identification as working in a DEI/DEIA position and denial of reassignment offered to other Agency employees. The decision to label Plaintiffs as DEIA staff was based on improper purposes, among them, for retaliatory purposes and to punish people who worked in DEIA office. The DEIA designation is based on false premises and the sanctions it imposed are disproportionate to any perceived infraction. The Defendant chose to punish career civil servants, which confirms the retaliatory and disproportionate nature of the DEIA designation. This improper purpose and absence of any legitimate justification demonstrates that the DEIA designation is abusive and irrational. As a result of Defendants' actions, Plaintiff's Fifth Amendment right to due process has been violated. Defendant's actions have caused Plaintiffs to suffer ongoing and irreparable harm.

47. The purpose of the DEIA designation and designating Plaintiffs as DEIA employees was to discriminate against the Plaintiffs. The DEIA designation targeted the Plaintiffs with sanctions and denied all rights afforded to all other federal employees similarly situated to Plaintiffs. The improper motive behind the DEIA designation is apparent on its face. The government lacks even a rational basis for the DEIA designation. The DEIA designation seeks to punish the Plaintiffs for a perceived belief of advocating for DEIA policies. The

designation of Plaintiffs as DEIA staff is a violation of the Equal Protection Clause and the DEIA designation has caused and is causing ongoing and irreparable harm to the Plaintiffs.

## Prayer for Relief

Wherefore, Plaintiffs respectfully request that the Court enter an award and judgment in favor of Plaintiffs, against Defendant as follows:

(a) A finding that Defendant's actions are in violation of the Administrative Procedure Act, 5 U.S.C. § 706, et seq.; and a violation of Plaintiff's rights under the First and Fifth Amendments;

(b) Injunctive and declaratory relief under the APA, the First and Fifth Amendments, and immediately enjoin Defendant from designating Plaintiffs as DEIA staff and order a public recantation of these designations to USDA employees and the public at large;

(c) Order that Defendants not only restore Plaintiffs to their pre-administrative leave status, and where necessary, consider them for reassignment to open or available mission critical positions throughout the USDA for which they are qualified, based on their transferable skills in program management and other functions, without regard to the artificially restricted "competitive area" definition in the January 24, 2025 OPM Memorandum;

(d) Preliminarily, and then permanently, enjoin Defendant from designating Plaintiffs as DEIA staff;

(e) Compensatory damages for the significant and ongoing professional harm caused by the unlawful and stigmatizing DEIA designation, including but not limited to: Lost professional opportunities, Reputational damage, Emotional distress resulting from arbitrary and capricious agency actions;

15

(f) A comprehensive review and reformation of the Agency's administrative procedures to prevent similar arbitrary designations and actions in the future;

(g) Expenses and costs, including attorneys' fees, pursuant to 5 U.S.C. § 504; and

(h) Such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all claims against Defendant.

Date: April 8, 2025                                      Respectfully submitted,

*/s/ David A. Branch*
David A. Branch
D.C. Bar No. 438764
Law Office of David A. Branch &
Associates, PLLC
1120 Connecticut Ave, N.W., Suite 500
Washington, DC 20036
Phone: (202) 785-2805
Email: davidbranch@dbranchlaw.com

**16**